**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE STEADY STATE<br>7707 MacArthur Blvd.<br>Cabin John, MD 20818<br><br>    *Plaintiff*,<br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>2707 Martin Luther King Jr. Ave. SE<br>Washington, DC 20528<br><br>    *Defendant.* | CIVIL ACTION NO. 1:26-cv-2240<br><br>**COMPLAINT** |

**PRELIMINARY STATEMENT**

1. Plaintiff The Steady State ("Plaintiff" or "Steady State") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of Homeland Security ("DHS") to meet its legal obligations and disclose documents requested. Specifically, Plaintiff is seeking documents related to the monitoring and suppression of protected expression by DHS and its components.

2. To date, Defendant has failed to make a determination regarding Plaintiff's FOIA request, to disclose any of the requested documents within the time stipulated under FOIA, or to provide any date when such documents will be disclosed.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4.  This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5.  This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6.  This Court has the authority to award reasonable costs and attorneys 'fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7.  Plaintiff, The Steady State, is a nonprofit 501(c)(4) organization of more than 400 former senior national security professionals. Its membership includes former officials from the CIA, FBI, Department of State, Department of Defense, and Department of Homeland Security. The Steady State advocates for constitutional democracy, the rule of law, and the preservation of America's national security institutions. It publishes regular news updates, commentary, and analysis on its Substack and in its Sentinel Podcast.  The organization is incorporated under the law of Maryland.

8.  Defendant DHS is an agency of the United States under 5 U.S.C. § 552(f)(1). DHS is headquartered at 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528, and has possession and control over the records Plaintiff has requested.

9.  U.S. Customs and Border Protection ("CBP"), the DHS Privacy Office ("DHS Privacy"), and U.S. Immigration and Customs Enforcement ("ICE") are components of DHS.

10. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA.  Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

## STATEMENT OF FACTS

11. Numerous news media reports indicate that DHS is collecting and retaining information about the First Amendment-protected activities and viewpoints of U.S. persons, and has plans to collect and retain more such information.

12. Statements by members of the Trump Administration indicate that law enforcement and immigration authorities may intend to retaliate against people for constitutionally protected protest and expression.

13. During a January 15, 2026 interview with Laura Ingraham on Fox News, White House Border Czar Tom Homan said that he is "pushing for" the federal government to create a database of Americans opposed to the Trump Administration's immigration policies. Mr. Homan stated that, "We're going to create a database. Those people that are interfering, we're going to make them famous and put their face on TV. We're going to let their employers and their neighborhoods and their schools know who these people are. I bet you a lot of their employers don't know what they are doing."[1]

14. Credible reports indicate that Department personnel have already begun to collect information about individuals engaging in the constitutionally protected activity of filming DHS officers and vehicles in public places.

---

[1] Shimon Prokupecz, Evan Perez & Holmes Lybrand, *Federal Immigration Officers Had Been Collecting Personal Information About Protesters in Minneapolis — and Had Documented Details About Alex Pretti Before He Was Fatally Shot*, CNN (Jan. 27, 2026), https://edition.cnn.com/2026/01/27/us/alex-pretti-protesters-minneapolis-invs.

15. According to filings in a class action lawsuit in U.S. District Court for the District of Maine, alleged law enforcement and immigration officers have been telling protesters that their activities are being monitored and may result in retaliation.[2]

16. In her class action complaint, protester Colleen Fagan, stated that on January 23, 2026, an ICE officer told her that he was photographing her car, "'cause we have a nice little database and now you're considered a domestic terrorist. So have fun with that."[3]

17. Another protester, Elinor Hilton, has alleged in court filings that on January 21, 2026, her biometric data and license plate were collected by a DHS agent who told her "If you keep coming to things like this, you are going to be on a domestic terrorist watchlist. Then we're going to come to your house later tonight."[4]

18. According to CNN, in early January, DHS leadership sent a memo to agents temporarily assigned to Minneapolis asking them to "capture all images, license plates, identifications, and general information on hotels, agitators, protestors, etc., so we can capture it all in one consolidated form."[5]

19. CNN's report indicated that "The form — titled 'intel collection non-arrests' — allows agents to fill in personal information of agitators and protesters who they encounter.[6]

20. In an letter to United States Representative Alejandro Frost, dated April 21, 2026, Todd Lyons, Senior Official Performing the Duties of the Director at ICE, denied that DHS was specifically monitoring protest activity, but acknowledged that "ICE collected information to identify

---

[2] First Amended Class Action Complaint for Declaratory and Injunctive Relief, *Hilton v. Mullin*, No. 2:26-cv-00092-JAW (D. Me. Apr. 27, 2026), ECF No. 29.

[3] *Id.* at ¶ 5.

[4] *Id.*

[5] Prokupecz, et al., *Federal Immigration Officers,* supra note 1.

[6] *Id.*

individuals reasonably believed to be involved in, or directly supporting, potential violations of federal law and to address officer safety and facility security concerns."[7]

21. These assurances, though, are less than comforting because they come from an Administration that has consistently over-defined terrorism to include a wide swath of protected expression.

22. Within hours of the deaths of Renee Good and Alex Pretti, former Secretary Noem publicly proclaimed that they were engaged in "domestic terrorism."[8]

23. Former Secretary Noem also told journalists that it is "violence" to be "doxing" and videotaping DHS officers while they are performing their duties.[9]

24. A Department Assistant Secretary threatened to prosecute individuals who videotape the officers in public places, an activity that is protected by the First Amendment.[10]

25. Because it is concerned about the monitoring of, and potential retaliation for, protected expression, Steady State submitted a FOIA request to three of DHS' components.

---

[7] Letter from Todd M. Lyons, Acting Dir., U.S. Immigr. & Customs Enf't, to Rep. Maxwell Frost (Apr. 21, 2026), available at https://www.documentcloud.org/documents/28221052-lyons-response-to-frost-42126/

[8] Benjamin S. Weiss, *Noem Refuses to Backpedal on Calling Alex Pretti a Domestic Terrorist*, Courthouse News Serv. (Mar. 3, 2026), https://www.courthousenews.com/noem-refuses-to-backpedal-on-calling-alex-pretti-a-domestic-terrorist/; Maria Ramirez Uribe & Amy Sherman, *Experts Question Noem Calling Good a "Domestic Terrorist." Here's What the Term Means*, PBS NewsHour (Jan. 10, 2026), https://www.pbs.org/newshour/politics/experts-question-noem-calling-good-a-domestic-terrorist-heres-what-the-term-means.

[9] Grace Bellinghausen, *Secretary Kristi Noem Addresses Surge in Attacks on ICE Agents in Tampa*, CBS12 (July 13, 2025), https://kfoxtv.com/news/nation-world/secretary-kristi-noem-addresses-surge-in-attacks-on-ice-agents-in-tampa-dhs-us-immigration-and-customs-enforcement-agents-florida-department-of-homeland-security-july-13-2025.

[10] Matthew Cunningham-Cook, *DHS Says Making and Posting Videos of ICE Agents Is "Violence"*, Ctr. for Media & Democracy (Sept. 9, 2025), https://www.exposedbycmd.org/2025/09/09/dhs-says-making-and-posting-videos-of-ice-agents-is-violence/.

Plaintiff's FOIA Request

26. On April 6, Steady State submitted its request ("Request") to CBP, DHS Privacy, and ICE via portal. Specifically, Plaintiff requested:

> Copies of any policy, directive, or instruction, whether formal or informal, provided to Department personnel—
>    i. that defines the terms "domestic terrorism," "stalking," "doxing or doxxing," "obstructing," "impeding," "anti-American," "anti-Christianity," "anti-Fascism," "anti-capitalism," "support for the overthrow of the United States Government," "extremism on migration, race, and gender," and "hostility towards those who hold traditional American views on family, religion, and morality," or other criteria for maintaining Covered Records;
>    ii. regarding the collection of Covered Records, including the form entitled, "intel collection non-arrests," and any instructions for the completion of that form.
>    iii. regarding the disclosure of information from Covered Records to persons other than employees of the Department;
>    iv. requests to social media, media, or technology providers regarding persons engaged in Covered Expression; and
>    v. regarding the drafting, creation, review, or publication of legal documentation governing the collection, maintenance, recording, or retention of Covered Records systems under the Privacy Act of 1974 and the E-Government Act of 2002, including Privacy Threshold Analyses, System of Records Notices, Privacy Impact Assessments, and Computer Matching Agreements.

27. Steady State's request specified that:

> Systems and databases that are subjects of this request include, but are not limited to, Bluesky, Grapevine, Hummingbird, Reaper, Sandcastle, Sienna, Slipstream, and Sparta, to the extent they are used to maintain Covered Records. The search should also include paper and electronic including electronic mail, instant messages, chats, SMS messages, and text messages, and other written communications (including iMessage, Slack, Microsoft Teams, Zoom, WhatsApp, Signal)."

28. To provide additional clarity in its request, Steady State defined "Covered Records" and "Covered Expression."

29. Per Steady State's request:

> Covered Records include any records of a U.S. Person's Covered Expression, but exclude records specifically protected from disclosure by federal statute. To the extent PII about individuals is responsive to this request, the Requestors request

and agree to the redaction of that PII.  Covered Records include records maintained by the Department, its components and agencies, and its personnel, including paper and electronic records of policies, plans, doctrines, memoranda, communications, electronic mail, instant messages, chats, SMS messages, and text messages, and other written communications (including iMessage, Slack, Microsoft Teams, Zoom, WhatsApp, Signal). Covered Records also include records that are shared with or transmitted between Department employees, or between Department employees and non-Department employees, or with persons or organizations outside the federal government, including over personal or private email and social media accounts.  Covered Records also include any records in draft form, including draft policies and directives, that are distributed to agency personnel and relied on during the performance of official duties, or that document substantially post-decisional agency policies or practices.

30. Per Steady State's Request:

Covered Expression includes any social, political, or artistic expression, protest, or publication—

    i. Regarding Government policies, practices, and conduct, including by (1) following, monitoring, photographing, or filming Department vehicles or personnel in public places; (2) engaging in other forms of activism, such as by blowing whistles or otherwise warning the targets of Department enforcement operations; (3) participating in protests or demonstrations; (4) the online, print, or broadcast criticism of or commentary on DHS activities and policies; or (5) organizing, promoting, republishing, funding, or otherwise supporting the forms of expression described in clauses (1) through (4) of this paragraph.

    ii. That includes, but is not limited to, expression that any officer or employee of the government defines as 'anti-Fascism, anti-Americanism, anti-capitalism, and anti-Christianity; support for the overthrow of the United States Government; extremism on migration, race, and gender; and hostility towards those who hold traditional American views on family, religion, and morality.'"

31. In its Request, Steady State asked for news media fee status and expedited processing.

32. On April 20, 2026, via email, CBP acknowledged receipt of the Request and assigned it tracking number CBP-FO-2026-083943. CBP invoked FOIA's "Unusual Circumstances" provision to claim that it needed an additional 10 days to process the request.

33. On the same day, in a separate email, CBP denied Steady State's request for expedited processing.

34. On May 12, 2026, via email, DHS Privacy acknowledged Steady State's Request and assigned tracking number 2026-HQFO-02272.

35. DHS Privacy determined that Steady State is a news media requester.

36. Per Plaintiff's records, ICE has not sent a formal acknowledgement of Steady State's Request; however, the agency's Secure Release portal indicates that the request was received and assigned tracking number 2026-ICFO-22858.

37. Plaintiff followed up on its Request on June 15, 2026, via emails to all three components.

38. CBP and ICE did not respond.

39. DHS Privacy replied on June 15, 2026, giving an estimated wait time of 6-9 months.

40. DHS Privacy further replied on June 16, 2026, stating that a portion of the responsive documents belong to ICE and, therefore, DHS would be transferred to that component.

41. To date, none of the DHS components have provided documents in response to Plaintiff's Request. Nor has the agency provided any justification for failing to provide documents within FOIA's deadlines.

## COUNT ONE:

### *Violation of Statutory Deadline*

42. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

43. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information.  FOIA reflects a "profound national commitment to ensuring an open Government," and agencies must "adopt a presumption in favor of disclosure."  Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

44. The FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i).

45. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

46. More than two months have passed since April 6, 2026, the date Plaintiff submitted its Request to DHS, yet the agency has provided no documents in response to or otherwise made a determination in response to Plaintiff's Request. Twenty working days from April 6, 2026, was May 4, 2026.

47. Only CBP has invoked unusual circumstances extending its deadline to respond to Plaintiff's request. Thirty working days from the submission of the request was May 18, 2026.

48. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies, Plaintiff now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT TWO

### *Unlawful Withholding of Agency Records*

49. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

50. Defendant DHS has failed to search for records responsive to Plaintiff's FOIA Request.

51. Defendant's failure to make a determination on or disclose the documents requested in Plaintiff's FOIA Request within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

52. Defendant's conduct amounts to a denial of Plaintiff's FOIA Request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the monitoring of protected expression.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

i.    Enter an order declaring that Defendant wrongfully withheld requested agency documents;

ii.   Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iii.  Maintain jurisdiction over this action until Defendant is in compliance with the FOIA, the Administrative Procedure Act, and every order of this Court;

iv.   Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

v.    Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on June 24, 2026.

s/ *Ginger P. McCall*_____
Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642
*Attorneys for Plaintiff*